In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00082-CR


______________________________




MILES PATRICK CLAYTON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Harrison County, Texas


Trial Court No. 2007-1502




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Miles Patrick Clayton, after having been convicted by a jury for assault, submitted the issue
of punishment to the trial court. Having been sentenced to 365 days in jail and a $4,000.00 fine,
Clayton was placed on community supervision for a period of twenty-four months upon the payment
of $400.00 and court costs. 

I. FACTUAL AND PROCEDURAL BACKGROUND

 The person whom Clayton was charged with assaulting (1) was his wife, Megan Morrow, the
assault occurring on July 12, 2007. Although Clayton and Morrow were separated, they were then
together in Clayton's truck while traveling on Highway 80 in Harrison County and attempting to
resolve their differences. The reconciliation attempt was apparently aborted when the two began to
argue, giving rise to Clayton striking Morrow as they proceeded in the truck. They drove to the home
of Jesse Clayton, Clayton's father, all the while continuing their argument. After exiting the truck,
Clayton pinned Morrow against the vehicle and struck her again. When Morrow tried to leave,
Clayton pulled her hair; Morrow fell to the ground, and Clayton struck her once more. 

 Morrow extricated herself from Clayton's grasp and the physical contact was terminated.
Morrow was driven by Maybelle Sloan (the live-in girlfriend of Jesse Clayton, who was present at
the time) to a convenience store so that Morrow could call her father to come pick her up.

 The day following these occurrences, Morrow contacted the Harrison County Sheriff's Office
and was interviewed by Darrell Pruitt, an investigator, to whom she gave a statement concerning the
incident. Morrow's statement was transcribed by Pruitt and printed; after reviewing the printed
statement, Morrow signed it and requested that a criminal complaint be filed against Clayton. She
also completed a family violence form. The family violence form and Morrow's signed statement
were both admitted at trial without objection.

 During his interview, Pruitt also photographed Morrow and included the photographs as a
part of his report. The photographs Pruitt took, admitted without objection, depict Morrow to have
bruises on her arms and a split lip. During the interview, Morrow told Pruitt that the bruising on her
arms was caused by Clayton. On the family violence form, Morrow checked "yes" to the question
inquiring if she had been injured.

 At trial, Morrow proved herself to be a reluctant witness. Although she readily testified that
she and Clayton had engaged in a heated argument on July 12, she claimed that she did not
remember if Clayton had struck her. Morrow said that she went to work at the Waffle House after
the altercation and that after she left work, she went to the hospital emergency room because she was
experiencing a bad headache, which she believed to be a migraine such as she had experienced in
the past. 

 Sloan and Jesse both testified that Clayton did not hit Morrow. Despite this testimony, the
jury returned a verdict finding Clayton guilty, after which Clayton waived sentencing by the jury. 
He emphasized that he wanted the trial court to issue the sentence so that bond could be posted and
an appeal filed. No testimony or evidence was offered during the punishment phase. The court did
not order a presentence investigation (PSI) and assessed the maximum sentence for the offense, (2) but
granted community supervision as stated above.

 On appeal, Clayton claims that the evidence was legally and factually insufficient, that the
information was so vague as to be constitutionally infirm, and that the trial court committed
reversible error in rendering punishment in the absence of a PSI.

II. ANALYSIS OF POINTS OF ERROR

 A. Legal and Factual Sufficiency of the Evidence

 Since Clayton has challenged both the legal and factual sufficiency of the evidence, in order
to avoid redundancy, we examine them together.

 In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Cardenas v. State, 30 S.W.3d 384 (Tex. Crim. App. 2000). In conducting this review, we
do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure
that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993); Harris v. State, 164 S.W.3d 775 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd).

 A factual sufficiency review begins with the presumption that the evidence supporting the
jury's verdict is legally sufficient. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We
view all evidence in a neutral light when conducting a factual sufficiency review. Neal v. State, 256
S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S.Ct. 1037 (2009); Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006). We must determine if the evidence in support of the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence. Lancon v. State, 253 S.W.3d
699, 705 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414-15; Drichas v. State, 219 S.W.3d 471,
473 (Tex. App.--Texarkana 2007, pet. ref'd).

 We are mindful of the fact that a jury has already heard the evidence and convicted based on
that evidence. While a factual sufficiency review allows a very limited degree of "second-guessing"
the jury, the review should be deferential, with a high level of skepticism about the jury's verdict
before a reversal can occur. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson,
204 S.W.3d at 417. 

 The primary difference between legal and factual sufficiency standards is that "the former
requires the reviewing court to defer to the jury's credibility and weight determinations while the
latter permits the reviewing court to substitute its judgment for the jury's on these questions 'albeit
to a very limited degree.'" Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

 In addition, we are instructed to employ a hypothetically-correct jury charge analysis to
evaluate both the legal and factual sufficiency of evidence. Grotti v. State, 273 S.W.3d 273 (Tex.
Crim. App. 2008). Such a charge accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant was tried. 
Villarreal v. State, 286 S.W.3d 321 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).

 Under the hypothetically-correct jury charge analysis, it was the responsibility of the State
to prove that (1) Clayton (2) intentionally, knowingly, or recklessly (3) caused (4) bodily injury (5) to
another. (3) 

 Reiterating the pertinent testimony bearing on this, the testimony given by Pruitt provided
evidence that on July 13, 2007, Morrow reported assaults on her by Clayton the previous day. This
information was typed and put in a statement format, which Morrow signed. Pruitt testified that he
saw bruising on Morrow's arms and a split lip which happened in the confrontation with Clayton. 
The altercation between Morrow and Clayton resulted in Clayton hitting and grabbing Morrow. 
Morrow told Pruitt then that her injuries had been caused by Clayton. (4) 

 The evidence at trial also included seven photographs depicting Morrow's bruising, a scratch
mark, and a split lip. Pruitt testified that these marks and split lip were caused by Clayton hitting
Morrow.

 The Texas Penal Code defines bodily injury as physical pain, illness, or any impairment of
physical condition. (5) No witness testified directly that Morrow suffered pain as a result of being
struck by Clayton. However, the jury is permitted to draw reasonable inferences from the evidence,
including an inference that the victim suffered pain as a result of her injuries. See Goodin v. State,
750 S.W.2d 857, 859 (Tex. App.--Corpus Christi 1988, pet. ref'd). The existence of a cut, bruise,
or scrape on the body is sufficient evidence of physical pain necessary to establish "bodily injury"
within the meaning of the statute. Arzaga v. State, 86 S.W.3d 767, 778 (Tex. App.--El Paso 2002,
no pet.) (citing Bolton v. State, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (evidence of cut on arm
sufficient to show bodily injury)).

 Although Morrow testified to an apparent lapse of memory which caused her to forget the
physical assault on her (acknowledging that she was testifying only because she was subpoenaed to
do so), Morrow identified her signature on the statement prepared by Pruitt, as well as the
photographs depicting the bruises on her arms. She likewise testified that she remembered neither
the bruises nor the cause for the bruises to be on her arm. Morrow explained that she had been
involved in a serious automobile accident the April preceding the July incident, and she was still
healing from the accident in July. 

 Morrow testified that she and Clayton went to the home of Clayton's father, where she got
a ride to the convenience store from Sloan. Morrow's father picked her up from the store, and
Morrow went to work at the Waffle House later that afternoon. Morrow testified that she and
Clayton were arguing at the home of Jesse, but she was unable to remember the cause of the
argument. 

 Both Sloan and Jesse denied that any physical altercation took place between Morrow and
Clayton while they were at Jesse's home. Although Sloan indicated that she heard Morrow and
Clayton bickering, she paid little attention to it. She then agreed to give Morrow a ride to a
convenience store on Sloan's way to work. Sloan did not notice that any harm had come to Morrow
and saw no bruises on her. She indicated that Morrow made no complaint to her about being hurt. 

 Jesse testified that he recalled Clayton and Morrow coming to his house on the day of the
incident and they were arguing. He neither witnessed any physical violence being inflicted nor heard
anyone complain that physical violence had taken place. According to Jesse, Morrow did not have
a split lip or any bruising. 

 When the entirety of this testimony and evidence (including Morrow's witness statement and
the photographs taken by Pruitt) is viewed in a light favorable to the verdict, a rational jury could
find the essential elements of the offense of assault beyond a reasonable doubt.

 In our factual sufficiency review, we must take into account Morrow's testimony that she
does not recall Clayton striking her. We take into account as well the testimony of Sloan and Jesse
that they did not witness any physical violence; Morrow did not complain that she was in pain and
no injuries to Morrow were observed by Jesse or Sloan after the assault. The photographs taken the
next day clearly indicated bruising to Morrow's arms. The split lip was not readily visible unless
Morrow lifted her upper lip so that the cut could be seen. Pruitt testified that, indeed, the bruising
and split lip resulted from Clayton striking Morrow. 

 It was the jury's task to weigh this evidence and draw all reasonable inferences from it. 
Arzaga, 86 S.W.3d at 779. The trier of fact is free to believe or disbelieve part or all of a witness's
testimony. Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). The evidence in support
of the verdict is neither so weak that the verdict is clearly wrong and manifestly unjust, nor is the
jury's finding against the great weight and preponderance of the conflicting evidence. The evidence
is both legally sufficient and factually sufficient to support the conviction.

 B. Validity of the Information 

 The question of whether the information charges the criminal offense of assault as defined
by the Texas Penal Code is an issue of law. Because this issue is based on undisputed facts, we will
review de novo this issue of law. See generally Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997); Brossette v. State, 99 S.W.3d 277, 280 (Tex. App.--Texarkana 2003, pet. dism'd,
untimely filed).

 Clayton did not object to the information prior to trial. Here, Clayton claims that the
information was fundamentally defective in that it is not an "information" under Article V,
Section 12 of the Texas Constitution and therefore fails to vest the trial court with jurisdiction. 
Clayton contends that this issue can be raised for the first time on appeal. See Teal v. State, 230
S.W.3d 172, 179 (Tex. Crim. App. 2007). Clayton is correct in this assertion. However, Clayton's
conclusion that the information was fundamentally flawed is incorrect.

 From an historical standpoint, defects of substance in an information or indictment were
"fundamental" errors and could be challenged at any point in the proceedings. See, e.g., Morris v.
State, 13 Tex. Ct. App. 65, 71 (1882); see also Cook v. State, 902 S.W.2d 471, 476 (Tex. Crim. App.
1995). Article V, Section 12 of the Texas Constitution was amended in 1985 to provide that the
presentation of an indictment or information vests the trial court with jurisdiction over the case. See
Tex. Const. art. V, § 12; see also Studer v. State, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990). 
A defendant waives any defect of form or substance in an information if no objection is made before
the date trial commences. See Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005). 

 However, an instrument which is not an indictment or information under Article V,
Section 12 of the Texas Constitution fails to vest the trial court with jurisdiction and the issue can
be raised for the first time on appeal. See Duron v. State, 956 S.W.2d 547, 555 (Tex. Crim. App.
1997); Mantooth v. State, 269 S.W.3d 68, 72 (Tex. App.--Texarkana 2008, no pet.). "[T]o comprise
an [information] within the definition provided by the constitution, an instrument must charge: (1) a
person; (2) with the commission of an offense." Cook, 902 S.W.2d at 477. Further, an instrument
is an information under the Constitution if "it accuses someone of a crime with enough clarity and
specificity to identify the penal statute under which the State intends to prosecute, even if the
instrument is otherwise defective." Duron, 956 S.W.2d at 550-51.

 A charging instrument does vest jurisdiction in the trial court, and thus must be objected to
prior to trial, when the instrument is clear enough in its language that the defendant can identify what
Texas Penal Code provision he is accused of violating. Teal, 230 S.W.3d at 180.

 According to Clayton, the information fails because it makes reference to "victim" without
reference to Morrow, and the term "victim" is neither defined in the Texas Penal Code nor is it
identified in the jury charge. 

 The complained-of information in this case states: 


 MILES PATRICK CLAYTON, on or about the 12TH DAY OF JULY, A.D., 2007,
in the County of Harrison and State of Texas and before making and filing of this
information, did then and there in said County and State,

 

 intentionally, knowingly and recklessly cause bodily injury to MEGAN MORROW,
by STRIKING VICTIM ABOUT THE FACE AND BODY WITH HIS HAND AND
BY GRABBING VICTIM'S ARM AND BY PULLING VICTIM'S HAIR, and
MEGAN MORROW was then a member of defendant's family and/or household


 against the peace and dignity of the State.


 The information, though perhaps not artfully drawn, clearly gave Clayton notice of the
allegations he was called upon to defend. The information satisfies constitutional muster in that it
(1) charges a person, namely "Miles Patrick Clayton" (2) with the commission of an offense. The
information accuses Clayton of a crime with enough clarity and specificity to identify the penal
statute under which the State intended to prosecute. Because the information is plainly an
"information" under Article V, Section 12 of the Texas Constitution, Clayton was required to voice
any objections to it prior to commencement of trial. See Tex. Code Crim. Proc. Ann. art. 1.14(b). 
Because this was not done, Clayton waived any objections to the information.

 C. Absence of PSI Report

 Clayton claims the trial court committed reversible error in assessing the maximum
permissible punishment without having first obtained a PSI. As we held in Smith v. State, 91 S.W.3d
407, 409 (Tex. App.--Texarkana 2002, no pet.), the general rule is the trial court must order a PSI
report unless the Texas Code of Criminal Procedure provides an exception. (6) No statutory exception
applies in this case. However, when a defendant fails to object to the lack of a PSI or call the lack
of a PSI to the attention of the trial court, he waives the requirement and error on this issue is not
preserved for appellate review. Id.

 Counsel for Clayton mentioned a PSI, but did not specifically request one and, instead,
indicated a desire for immediate sentencing. The sole mention of the PSI was prefatory to a request
that sentencing proceed promptly so that an appeal might be taken. The exchange between the trial
court and Clayton's counsel's mention of a PSI follows:

 THE COURT: Gentlemen, are we ready to proceed with sentencing?


 [Counsel for State]: Yes, sir.

 

 [Counsel for Clayton]: We're going to the judge for sentencing, Judge,
because we are going to appeal. I don't know how you want to do it. Do you want
to do a PSI? Do you want to do the sentencing now and the bond and all that?

 

 THE COURT: Well, you've got an election. Mr. Clayton wants to withdraw
his -- 

 

 [Counsel for Clayton]: Yes.

 

 THE COURT: And does the State object to that?

 

 [Counsel for State]: No, Your Honor.

 

 THE COURT: All right. Any evidence or witnesses?

 

 [Counsel for Clayton]: No. None. We just want the sentencing done so we
can make appeal and go on.


 The issue raised by this exchange is whether a PSI was called to the trial court's attention
sufficiently or in such a way as to require the trial court to order the study. While counsel for
Clayton did mention the PSI, he attached no importance to it and he also repeatedly stated that he
desired the sentencing to go forward; the focus was not on the PSI, but on getting the process
completed so that an appeal could be filed. Clayton failed to object or to call the trial court's
attention to the PSI in a meaningful way. The PSI was mentioned as a peripheral issue. We find that
Clayton waived his right to a PSI report. 

 Even had there been no waiver of the PSI, Clayton was not harmed by the failure to conduct
a PSI. When a trial court is required to order a PSI, but fails to do so, the court of appeals must
conduct a harm analysis. Whitelaw v. State, 29 S.W.3d 129, 132 (Tex. Crim. App. 2000)
(superseded by statute on other grounds); Buchanan v. State, 68 S.W.3d 136, 140 (Tex.
App.--Texarkana 2001, no pet.) (applying harm analysis). Nonconstitutional error is harmless if
it did not affect the defendant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is
affected when the error had a substantial and injurious effect or influence on the verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The defendant does not have the burden of
showing harm, but harm must appear from the record. See Johnson v. State, 43 S.W.3d 1, 4 (Tex.
Crim. App. 2001) ("[N]o burden to show harm should be placed on the defendant who appeals."). 

 A PSI report provides information regarding the circumstances of the offense, the amount
of restitution necessary, the criminal and social history of the defendant, and any other information
relating to the defendant or the offense that is requested by the trial court. The PSI report is also to
set forth a proposed client supervision plan which describes programs and sanctions that the
community supervision and corrections department would provide in the circumstance the court
suspends the imposition of the sentence or grants deferred adjudication. Tex. Code Crim. Proc.
Ann. art. 42.12, § 9(a) (Vernon Supp. 2008). 

 Here, the record shows that Clayton and Morrow testified at the hearing. The same judge
who presided at Clayton's trial and heard the evidence also adjudicated him guilty. The trial court
was familiar with Clayton and the circumstances of the underlying offense. The attorney for the
State made the trial court aware of the fact that Clayton's sole prior criminal history was more than
ten years old. In addition, the court tempered the blow of the sentence by granting community
supervision. Under these circumstances, any error in failing to order the preparation of a PSI report
had no injurious effect on the punishment assessed and any such error is harmless. 

III. CONCLUSION

 Because we find the evidence legally and factually sufficient to sustain the conviction,
because any defect in the information was waived, and because the failure to order a PSI was
likewise waived, we affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: October 1, 2009

Date Decided: October 2, 2009


Do Not Publish

1. Section 22.01(a)(1) of the Texas Penal Code provides that an offense is committed if the
person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's
spouse." Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2008).
2. Section 12.21 of the Texas Penal Code provides that a person adjudged guilty of a class A
misdemeanor shall be punished by "a fine not to exceed $4,000; . . . confinement in jail for a term
not to exceed one year; or . . . both such fine and confinement." Tex. Penal Code Ann. § 12.21
(Vernon 2003).
3. Tex. Penal Code Ann. § 22.01(a)(1).
4. We acknowledge that much of Pruitt's testimony was hearsay, and note that no objection was
made to the majority of this testimony. Such hearsay might be excluded upon the request of a party
to the lawsuit. Once admitted without objection, however, such evidence enjoys a status equal to
that of all other admissible evidence. In particular, it has probative value and will support a
judgment in favor of the party offering it. Poindexter v. State, 153 S.W.3d 402, 409 (Tex. Crim.
App. 2005); Chambers v. State, 711 S.W.2d 240, 245-47 (Tex. Crim. App. 1986).
5. Tex. Penal Code Ann. § 1.07(a)(8) (Vernon 2005).
6. Article 42.12, Section 9(b) of the Texas Code of Criminal Procedure provides:


 The judge is not required to direct a supervision officer to prepare a report in a
misdemeanor case if: 

 (1) the defendant requests that a report not be made and the judge agrees to
the request; or 

 (2) the judge finds that there is sufficient information in the record to permit
the meaningful exercise of sentencing discretion and the judge explains this finding
on the record.


Tex. Code Crim. Proc. Ann. art. 42.12, § 9(b) (Vernon Supp. 2008).